IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARYL SUTULA-JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 02378 |
| vs. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | Magistrate Judge Sidney I. Schenkier |
| OFFICE DEPOT, INC., a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY**

Now comes Plaintiff, DARYL SUTULA-JOHNSON, by and through her attorneys, and
files this Memorandum of Law in support of her Motion for Summary Judgment on the Issue of
Liability.

**FACTS**

Plaintiff, Daryl Sutula-Johnson, began to work for Office Max more than 10 years ago as
a sales furniture account executive. (Exhibit B, Deposition of Daryl Johnson, Pg. 8) On or about
April 6, 2004, Office Max proposed a written contract to Plaintiff containing a commission
structure for her compensation for services rendered to that employer, which Plaintiff signed and
accepted in writing. (Exhibit B, Deposition of Daryl Johnson, Exhibit 1) Effective February 1,
2010, Office Max amended its Sales Incentive Compensation Plan for Furniture Account
Executive, which amendment was accepted by Plaintiff, forming a new contract between the
parties. (Exhibit B, Deposition of Daryl Johnson, Exhibit 2)

That compensation plan provided that Plaintiff would be paid commissions at the rate of
either 20% or 27%, depending upon gross profit, on orders she secured on behalf of Office Max,

which commissions would be paid to Plaintiff on the month following the invoice date from

Office Max to the customer. Plaintiff accepted that amended contract setting forth the new

compensation plan and thereafter performed the duties of a furniture account executive, and

secured orders for Office Max pursuant to that compensation plan. That plan constituted a

contract between Plaintiff and Office Max. (Exhibit B, Deposition of Daryl Johnson, p. 12)

On and after February 1, 2010, Office Max paid commissions to Plaintiff in accord with

the provisions of that contract. On or about November 8, 2013, Office Max merged with Office

Depot, which merger resulted in the formation of Defendant, Office Depot, Inc., a Delaware

corporation. (Exhibit A, Amended Complaint, Par. 11) Office Depot continued to employ

Plaintiff as a furniture account executive, and continued to pay her commissions pursuant to the

terms of the Sales Incentive Compensation Plan. (Exhibit B, Deposition of Daryl Johnson, Pg.

19)

On or about July 14, 2014, Defendant announced to Plaintiff and other employees that it

had adopted a new commission structure, under which Plaintiff's commission on sales made on

behalf of Defendant would be reduced to either 10% or 13%, depending upon the terms of the

sale of products sold to the customer. Defendant neither offered nor supplied any consideration

to Plaintiff for this reduction in Defendant's commission structure. (Exhibit A, Amended

Complaint, par. 14)

Although it did not produce a new compensation plan which correctly set forth its terms

until March, 2015, it began to pay Plaintiff under this new commission structure from July, 2014

forward. Plaintiff had earned commissions under the Office Max commission plan in the amount

of Seventy-one Thousand, Dollars ($71,000.00). (Exhibit B, Deposition of Daryl Johnson, p72)

Defendant has failed and refused to pay to Plaintiff the commissions which she has earned,

instead unilaterally reducing the commissions they paid her to the new commission structure, although she had already earned those commissions under the existing agreement between the parties.  (Exhibit A, Amended Complaint,  par. 18; Exhibit B, Deposition of Daryl Johnson, p. 42)

On September 5, 2014, Plaintiff received an email from Office Depot stating that she could obtain the details of the company's new incentive plan and was required to acknowledge it by September 12.  No such documents were available.  On September 26, Plaintiff was provided with new documents purportedly setting forth the new compensation plan. That document was in error, as it referred only to commissions to be paid on "new business."  Plaintiff informed Defendant of this defect almost immediately.  (Exhibit B, Deposition of Daryl Johnson, Exhibit 5) Plaintiff was not provided with a copy of Office Depot's compensation plan, containing the new commission structure until March 2, 2015, at which time she acknowledged that new policy. (Exhibit B, Deposition of Daryl Johnson, pgs. 44-46)

That new policy provided that Defendant would pay commissions earned by the employee, including Plaintiff, "in the calendar quarter immediately following the end of the Eligible Service Period. . . . Incentive plan payments will not be made earlier unless required by law."  (Exhibit B, Amended Complaint, par. 3)

At the same time, Defendant did not timely pay the commissions which were due to Plaintiff. Her commissions for the third quarter, 2014, were paid 30 days later than were due. (Exhibit B, Deposition of Daryl Johnson, Exhibit 5)

During the 2015 calendar year, Defendant purported to compensate Plaintiff for her services to it pursuant to that new compensation plan.  On or about December 21, 2015, Plaintiff resigned from her employment with Defendant.  (Exhibit C, Deposition of Joseph Siemianowski,

3

Exhibit 9)  Upon her resignation, Defendant informed Plaintiff that she would not be paid

commissions which she had earned, but had not been paid as of the date of her resignation.

Plaintiff demanded that Defendant pay to her the commissions she had earned during the months

of October, November and December, 2015, prior to her resignation which commissions amount

to approximately Fifty-six Thousand Dollars ($56,000.00).   Defendant has failed and refused to

pay to Plaintiff the commissions she earned pursuant to Defendant's Quarterly Incentive Plan,

although said payments are long overdue.  (Exhibit A, Amended Complaint, par. 18)

**ARGUMENT**

## I. DEFENDANT HAS BREACHED ITS CONTRACT FOR COMPENSATION TO PLAINTIFF

It has long been the law that an employee paid on commission earns the payment at the

time the sale is made, unless there is a clear agreement to the contrary.  *Atkinson v. New Britain*

*Machine Co.,* 154 F.2d 895, 901 (7th Cir. 1946).  Once the commissions have been earned, they

are to be paid, regardless of subsequent events.  *Technical Representatives, Inc. v. Richardson-*

*Merrell, Inc.,* 107 Ill. App. 3d 830, 834, 438 N.E.2d 599 (First Dist. 1982).

The Sales Incentive Plan in effect when Plaintiff first began working for Office Max

recognized this, stating that payment would be made to Plaintiff at the time the employer

received payment from the customer.  (Exhibit B, Deposition of Daryl Johnson, Exhibit 1, pg. 4)

The revised Office Max Sales Incentive Compensation Plan for Furniture Account Executive,

adopted February 1, 2010, specifically sets forth the time when commissions are earned: "The

commission . . . is earned at the earliest of the payment by the customer of the fully invoiced

proposal or the passing of the ninetieth day after the proposal was fully invoiced and the customer has not refused to pay the invoice due to issues not resolved by the FAE (Furniture Account Executive)  The Plan goes on to state: "The commissions will be calculated based on a fully invoiced customer proposal, less applicable taxes." (Exhibit B, Deposition of Daryl Johnson, Exhibit 1)

This compensation plan was in effect for Plaintiff when the merger occurred, resulting in Defendant becoming Plaintiff's employer.  It was obligated to pay Plaintiff under this compensation plan unless and until it properly entered into a new contract with her.  In fact, Defendant did pay Plaintiff on this plan until it announced its new payment plan in July, 2014. In September, 2015, Defendant provided Plaintiff with a document entitled "Office Depot, Inc. 2014 Contract Sales Division Quarterly Incentive Plan," (Exhibit B, Deposition of Daryl Johnson, Exhibit 2) which purported to cover the period "March 30, 2014 through December 27, 2014."  Plaintiff informed Defendant's personnel that the document was not correct, did not pertain to her, and she would not sign it.  (Exhibit A, Amended Complaint,  p. 29).

Despite its claim that it was imposing this new plan in September, 2014, Defendant did not deliver a completed copy of its new compensation plan ready for Plaintiff to sign until March 2, 2015.  It was at that time that Defendant delivered to Plaintiff the "Office Depot, Inc. 2015 Contract Sales Division Quarterly Incentive Plan, which she signed.  By its terms, that plan "supersedes any 2014 Office Depot, Inc. Incentive Plan" (Exhibit A, Amended Complaint,  p. 30).   Until that agreement was signed by Plaintiff, the prior agreement between the parties was still in force and effect.  Only after March 2, 2015, was Defendant entitled to pay Plaintiff at the new reduced commission rate.

One of the elements essential to the formation of a contract is mutual assent. Such assent is required also to modify a contract. One party may not unilaterally modify an agreement. *Delcon Group, Inc. v. Northern Trust Corp.,* 187 Ill.. App. 3d 635, 543 N.E.2d 595, 600 135 Ill. Dec. 212 (Second Dist. 1989). Plaintiff clearly objected to Defendant's 2014 Incentive Plan, because it did not apply to her on its face. Defendant did not insist that Plaintiff sign it. Rather, it issued a new 2015 Incentive Plan, which Plaintiff did sign. It was not until Plaintiff agreed to this incentive plan that a new contract was formed between the parties. *Pace Communications, Inc. V. Moonlight Design, Inc.,* 31 F.3d 587, 592 (7th Cir. 1994).

There is no doubt that Defendant's unilateral decision to refuse to pay to Plaintiff the commissions she had earned, pursuant to the commission policy in effect at the time the merger brought Office Depot into existence, was a material breach of the contract between the parties. The only question remaining to be asked is how much was due to Plaintiff as a result of her sales for each month between July 2014, and March, 2015, since they were not timely made Plaintiff is entitled to interest on those unpaid amounts. 815 ILCS 205/2.

## II DEFENDANT HAS REPEATEDLY VIOLATED THE PROVISIONS OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

### A. Defendant's Policy Purporting to Pay Commissions Quarterly is Void

The terms of the Wage Payment and Collection Act are clear. Employers must pay employees commissions earned by them monthly. 820 ILCS 115/3 Defendant's attempt to avoid this clear dictate of Illinois law by paying an alleged "draw" of $250 per month is a sham.

After Defendant adopted its new commission plan, it began paying commissions forty-five days after the end of each quarter. Thus, for the first quarter of 2015, commissions were

paid to Plaintiff in the third week of May. (Johnson Dep., p. 25). While Defendant claimed it

was going to pay Plaintiff a draw of $250 per month against commissions, they did so

sporadically. They paid Plaintiff one payment of $250 in the third quarter of 2014 and one such

payment in the fourth quarter. Finally, in January, 2015, Defendant began paying Plaintiff $250

each month. (Exhibit B, Daryl Johnson Dep., p. 28). In fact, Defendant did not even provide

Plaintiff commission statements regarding the sale she had made. She was finally given her first

commission statement after the merger in November, 2015 (Exhibit B, Deposition of Daryl

Johnson, p. 31).

The calculation of the commissions paid to Plaintiff were the same under the commission

plan issued by Office Max in 2010, and the new commission plan instituted by Defendant: the

date on which the invoice was sent to the customer. (Exhibit C, Deposition of Joseph

Siemianowski pp. 43-44)

This new payment plan is in egregious violation of the provisions of the Illinois Wage

Payment and Collection Act. That act defines "wages" as "any compensation owed an

employee by an employer pursuant to an employment contract or agreement between the 2

parties, whether the amount is determined on a time, task, piece, or any other basis of

calculation" 820 ILCS 115/2.

The Act requires wages to be paid as follows:

Sec. 3. Every employer shall be required, at least semi-monthly, to pay every
employee all wages earned during the semi-monthly pay period. Wages of
executive, administrative and professional employees, as defined in the Federal
Fair Labor Standards Act of 1939, may be paid once a month. Commissions may
be paid once a month.
(820 ILCS 115/3

Sec. 4. All wages earned by any employee during a semi-monthly or bi-weekly
pay period shall be paid to such employee not later than 13 days after the end of

7

the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned. (820 ILCS 115/4

There can be no argument that commissions to employees must be paid monthly, and such monthly payments must be made no later than 21 days after they are earned. Defendant's scheme of paying commissions quarterly, and not making actual payment of those commissions until 45 days after the end of each quarter does not come close to complying with the clear requirements of the Act.

The purpose of the Act is to provide remedies to employees more expansive than a common law action for breach of contract. *Zabinsky v Gelber Group, Inc.,* 347 Ill. App. 3d 243, 807 N.E.2d 666, 672, 283 Ill. Dec. 61 (First Dist. 2004). It was meant to provide employees with a cause of action for the timely and complete payment of earned wages or final compensation without retaliation from employers. *Miller v. Kiefer Specialty Flooring, Inc.,* 317 Ill. App. 3d 370, 739 N.E.2d 982, 986, 251 Ill. Dec. 49 (Second Dist. 2000).

Defendant cannot evade the clear provisions of this statute by claiming that commissions are not "earned" until they are paid, or that a draw of $250 per month (which Defendant did not actually pay for several months anyway) somehow excuses Defendant from complying with this clear statutory directive. Plaintiff's supervisor clearly stated that commissions are considered ready to be paid when the customer was billed for the products on which the commission is based. (Exhibit C, Siemianowski Dep., p. 43). Under any rational consideration, this is when the commission has been earned. Defendant's statement that these commissions are not

8

"earned" until they are paid is nothing but a subterfuge designed to avoid the clear requirements of the law. "The lack of a promise to vest does not revoke the employer's obligation to pay." *Camillo v. Wal-Mart Stores, Inc.,* 221 Ill. App. 3d 614, 582 N.E.2d 729, 733, 164 Ill. Dec. 166 (Fifth Dist. 1991).

As the regulations issued by the Illinois Department of Labor recognize, an employee "has a right to an earned commission when the conditions regarding entitlement to the commission have been satisfied." Title 56 Illinois Administrative Code, Section 300.510.

Plaintiff was entitled to be paid her commissions monthly. Those payments were clearly ready to be paid when the customer was billed for the orders placed on sales made by Plaintiff. The payment of those commissions are to be made no later than 21 days after the end of the month in which they are earned. Defendant has clearly violated these terms of the Illinois Wage Payment and Collection Act.

### B. Defendant's Policy Purporting to Forfeit Commissions When an Employee Leaves Defendant's Employ is Void

When an employee leaves employment, final wages are to be paid

Sec. 2. For all employees, other than separated employees, "wages" shall be defined as. Payments to separated employees shall be termed "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties. 820 ILCS 115/2

and

Sec. 5. Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee. Where such employee requests in writing that his final compensation be paid by check and mailed to 820 ILCS 115/5

Furthermore, the Illinois Sales Representative Act provides:

9

Sec. 2. All commissions due at the time of termination of a contract between a sales representative and principal shall be paid within 13 days of termination, and commissions that become due after termination shall be paid within 13 days of the date on which such commissions become due. Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void.
820 ILCS 120/2

The Sales Representative Act provides that when a commission comes due is determined first, by the contract between the principal (employer) and the sales person. If that contract does define when the commission comes due, or the terms of the contract are ambiguous or unclear, the past practices between the parties shall control. 820 ILCS 120/1 It is undisputed here, that the past practice of Defendant was that a commission was earned when an invoice was submitted to the customer for the goods sold. (Exhibit C, Deposition of Joseph Siemianowski, pp. 44-45)

Here, Defendant claims that Plaintiff is due no commissions because its policy states that any employee who leaves its employ forfeits all commissions which might otherwise be due.

First, that claim cannot deprive Plaintiff of commissions due to her more than a month prior to her leaving Defendant's employ, as those commissions were due to be paid to her monthly. Since those commissions were already due and payable to her, they cannot be deemed forfeited by the Defendant's fiat was obligated to pay them to her monthly, as we have demonstrated in the preceding section.

Nor can Defendant's policy be applied to commissions which were less than 30 days old, because the Sales Representative Act declares any such contractual provision void. Any commissions due at the date of an employee's leaving employment must be paid "within 13 days of the termination, or of the date on which the commissions become due." There can be no exception to this rule, as the Act specifically states that any provision in any contract "purporting to waive any of the provisions of this Act shall be void." 20 ILCS 120/2

10

Illinois law is absolutely clear and adamant that Defendant cannot deprive Plaintiff of the commissions she has earned by attempting to forfeit them, as that provision is void under the Act. Defendant must pay Plaintiff all of the commissions she had earned while employed by it. The primary objective of the Wage Payment and Collection Act, and the Sales Representative Act are to ensure that employees receive all earned benefits upon leaving an employer. Illinois law declares that no commission may be forfeited. Any claim that an employer may negate the protection provided by the Act "simply by varying the terms of its employment policy or contract" has been specifically rejected. *Mueller Co v. Department of Labor,* 187 Ill. App. 3d 519, 543 N.E.2d 518, 521, 135 Ill. Dec. 135 (Fourth Dist. 1989).

The legislature meant what it said when it provided that any attempt to evade the policy of the Act by seeking to somehow conjure up a waiver of an employee's rights to collect full compensation is void. No attempt by an employer to prevent an employee from collecting full compensation which has been earned, whether it be wages, commissions or bonuses, is to be allowed. Any such attempt, in whatever guise, is void and will not be enforced by the Courts. It is the "fundamental public policy of the State" of Illinois to protect the commissions of sales representatives working in Illinois. *Maher and Associates, Inc. v. Quality Cabinets,* 267 Ill. App. 3d 69, 640 N.E.2d 1000, 1005, 203 Ill. Dec. 850 (Second Dist. 1994). See also, *Midwest Enterprises, Inc. v. General Corp.*, No. 91 C 2229, 1991 WL 169059 at *4 (N.D. Ill. Aug. 27, 1991).

Defendant's failure to pay Plaintiff the commissions which she had earned while employed by it, but which it had not paid to her when she left its employ is a clear violation of Illinois law. She is entitled to a declaration of this Court that Defendant owes her those commissions, plus interest and plus the penalties contained in the Act. 820 ILCS 115/14(b)

11

CONCLUSION

Defendant has egregiously deprived Plaintiff of commissions she earned while employed by it. It has ignored clear Illinois statutory requirements regarding the payment of commissions earned by Plaintiff while she was employed by it.

First, it breached its contract with her by retroactively reducing the amount of commissions it paid to her on sales, and which she had earned. Defendant simply cannot retroactively reduce commissions already earned.

Further, Defendant has wilfully ignored the requirements of Illinois law by failing to pay the commissions earned by Plaintiff monthly, within 21 days after the end of each month.

Defendant has attempted to deprive Plaintiff of commissions she has earned by inserting a void provision in its commission policy, purporting to forfeit commissions which had not yet been paid when she left Defendant's employ. This provision is clearly void as against Illinois public policy.

Plaintiff is entitled to a declaration that she is entitled to Summary Judgment on liability for these reasons. The Court should then allow time for Plaintiff to determine the exact amount due to her for the commissions which have been wrongfully withheld from her, plus interest and statutory penalties and fees.

Respectfully submitted,
S/ Wayne B. Giampietro
Attorney for Plaintiff

Of Counsel
Poltrock & Giampietro,
123 W. Madison St., Suite 1300
Chicago, IL 60602
(312) 236 0606; Fax: 312 236 9264
wgiampietro@giampietrolaw.com
Attorney I.D. 0947776

12

13