# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARYL SUTULA-JOHNSON ) | |
| ) | |
| Plaintiff, ) | Case No. 15-cv-2378 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| OFFICE DEPOT, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Daryl Sutula-Johnson, brought this action against her employer, Office Depot, Inc., alleging that Office Depot breached its contract with her, unjustly enriched itself at her expense, and violated the Illinois Wage Payment and Collection Act by improperly implementing a new compensation plan and failing to properly calculate her compensation before the new plan went into effect. Following her resignation from Office Depot, Sutula-Johnson amended her complaint to additionally allege that Office Depot refused to pay her outstanding commissions following her resignation. Both parties have now filed cross-motions for summary judgment. For the reasons set forth below, Sutula-Johnson's motion for summary judgment [54] is denied and Office Depot's motion for summary judgment [51] is granted.

**Background**

The following facts are undisputed except where otherwise noted.[1] In April 2004, Sutula-Johnson was hired by office-supply company Boise Cascade as a sales executive for commercial

---
[1] This Court disregards those statements set forth in Sutula-Johnson's statement of facts that are based solely on citations to the amended complaint. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (recognizing that only admissible evidence may be considered in assessing a motion for summary judgment). This Court also disregards Sutula-Johnson's responses disputing Office Depot's statements of undisputed material facts which are unsupported by

1

office furniture. While employed by Boise Cascade, Sutula-Johnson was paid on a commission basis. Her commission was 27% for orders with an installed profit of 10% or greater, and 20% for orders with an installed profit of less than 10%.

Boise Cascade was subsequently acquired by OfficeMax Incorporated ("OfficeMax"), which retained Sutula-Johnson as a Furniture Account Executive ("FAE"). While working in this role, Sutula-Johnson was compensated pursuant to the OfficeMax Workspace Sales Incentive Compensation Plan for Furniture Account Executive (the "2010 OfficeMax Plan"), which it is undisputed that she accepted. In pertinent part, the plan provided that FAE's would be paid by commission, but would receive a bi-weekly draw that would be recovered from their subsequent commissions. Commissions were to be paid on the second or third paycheck of the month following the date that the commission was earned. The plan further provided that a commission was "earned" at the earliest of either the payment of the fully invoiced proposal or the passing of 90 days after the proposal was fully invoiced (assuming the customer had not refused to pay the invoice due to issues that the FAE failed to resolve). Sutula-Johnson, however, was grandfathered in under the terms of her prior commission plan with Boise, and therefore was entitled to disbursement of commissions when her sales orders were invoiced to the customer. Under the plan, Sutula-Johnson continued to earn 27% commissions on sales with an installation profit of over 10% and 20% commissions on sales with an installation profit of under 10%.
The Frequently Asked Questions (FAQ) contained in the plan further explained the plan's mechanisms, providing in pertinent part:

> Am I guaranteed to receive any payment under the plan?
>
> No. No associate shall have any vested interest in the payment of an incentive prior to any actual payment being made and earned.

---

reference to the affidavits, parts of the record, and supporting materials relied on. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

> What happens if I leave employment with OfficeMax?
>
> If you terminate employment with OfficeMax for any reason including retirement, death, or disability, you will cease to be a participant in the plan as of the date of termination. In these cases, you will receive payment only of any incentives earned as of the date of termination. An FAE will be paid a commission on propoals [sic] fully invoiced on or before the termination date, less any chargeback, recoupment, or reversal as described in the plan. An FAE will not earn any commission on invoices issued after the FAE's termination date. The commission payout (less any punch list items identified prior to termination) is earned at the earliest of the payment by the customer of the fully invoiced proposal or passing of the ninetieth day after the proposal was fully invoiced and the customer has not refused to pay the invoice due to issues not resolved by the FAE.

(Dkt. 58).

Upon receiving the FY 2010 sales incentive plan, the recipient was to sign an acknowledgement stating, in pertinent part, that they understood "that neither [the plan] nor any other written or verbal communication alters the status of my employment to anything other than at-will or otherwise creates a contract of employment." (Dkt. 58). In its FAQ section, the 2010 plan also provided, in pertinent part:

> Does my participation in the plan guarantee my employment?
>
> No. Neither this plan nor any action taken under the plan gives you the right to be retained as an employee for any period. This plan is not and should not be thought of as a contract of employment other than at-will. Employment with OfficeMax is "at-will." This means either you or the company have the right to terminate your employment at any time, for any reason, with or without notice.
>
> Can the plan be changed or terminated?
>
> Yes. OfficeMax, in its sole discretion, may amend or terminate the plan at any time for any reason without notice.

(Dkt. 58).

In November 2013, Office Max merged with Office Depot, resulting in the formation of the defendant, Office Depot, Inc. Sutula-Johnson continued to work for Office Depot in the same

capacity and continued to be compensated pursuant to the 2010 OfficeMax Plan until July of 2014. On July 14, 2014, Office Depot advised all furniture sales employees, including Sutula-Johnson, that Office Depot would be implementing a new compensation plan, the Office Depot, Inc. 2014 Contract Sales Division Quarterly Incentive Plan ("2014 Plan"), which would be in effect for all orders invoiced after July 14, 2014. Sutula-Johnson subsequently met with her supervisor to discuss the plan's provisions and how it would impact her compensation. Although not addressed in the parties' Rule 56 statements, at oral argument the parties agreed that under the new compensation plan Sutula-Johnson was paid a $3,400 salary every two weeks in addition to quarterly incentive payments. Under the terms of the 2014 plan, sales representatives with a margin above 125% received a 13.5% incentive payment and those with a margin below 125% received a 10% incentive payment. The incentive payments were to be made in lump sum payments in the calendar quarter following the end of the eligible service period. Payments, moreover, were not "earned or vested" until they were calculated, approved, and distributed. The 2014 plan also provided that an associate who terminated their employment during or after the eligible service period for a reason other than death, disability, retirement, or a reduction in force would not be eligible for any payment under the incentive plan unless such payment was required by law. And, like the prior plan, the 2014 plan provided that it "is not intended to be, and does not constitute in any manner, a contract or guarantee of employment between the Company and Eligible Associates and is not applicable beyond the Eligible Service Period." (Dkt. 58).

The 2014 plan went into general effect on July 14, 2014. Sutula-Johnson spoke with various managers about the plan and brought to their attention both general objections to its provisions and specific typos within its body. Despite her objections, Sutula-Johnson was informed that the plan was going into effect and would govern her compensation, and that if she was unwilling to accept

4

that she could resign.  Sutula-Johnson continued to work at Office Depot following those conversations, although she continued to refuse to sign the 2014 plan.

In January 2015 Office Depot adopted the Office Depot, Inc. 2015 Contract Sales Division Quarterly Incentive Plan ("2015 plan").  On March 1, 2015, Sutula-Johnson signed a copy of that plan.  Like the 2014 plan, the 2015 plan required that "associates must be employed on payment date as Incentive Plan payments are not earned or vested until payment date; an associate must be employed on date of payment to earn an Incentive Plan payment, unless otherwise required by law." (Dkt. 58).  It also provided, like the 2014 plan, that it was not intended to be, and did not constitute in any manner, a contract or guarantee of employment.

Sutula-Johnson filed the complaint in this action in March 2015, alleging breach of contract, unjust enrichment, and violations of the Illinois Wage Payment and Collection Act.  On December 18, 2015, Sutula-Johnson resigned from Office Depot.  She subsequently amended her complaint to include claims arising from Office Depot's alleged failure to pay her incentive payments due for the fourth quarter of 2015.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989).  "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Sutula-Johnson moves for partial summary judgment on her breach of contract and Illinois Wage Payment and Collection Act claims. Office Depot, in turn, moves for summary judgment on all of Sutula-Johnson's claims.

*Breach of Contract*

Sutula-Johnson's complaint alleges that Office Depot breached its contract with her by (1) failing to pay her the commissions due to her under the 2010 plan that had not yet been invoiced by July 14, 2014, (2) failing to pay the commissions she earned between July 14, 2015 and March 2, 2015 at the rates established under the 2010 plan, and (3) refusing to pay her the incentive payments that she was owed pursuant to the 2015 Plan upon her resignation. This Court will address each argument in turn.

In order to state a claim for breach of contract, a plaintiff must establish (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015).

This Court first turns to Sutula-Johnson's assertion that she is entitled to $64,000 in commissions that she generated between July 14, 2014 and March 2, 2015, the date on which she signed the 2015 plan. This argument rests on Sutula-Johnson's theory that the 2014 plan could not go into effect until she had signed it because a preexisting contract cannot be unilaterally modified without mutual assent. *Robinson v. Ada S. McKinley Comm. Servs., Inc.*, 19 F.3d 359, 363–64 (7th Cir. 1994). Because Sutula-Johnson refused to sign the 2014 plan, and did not sign the 2015 plan until

March 2, 2015, she contends that her compensation should have been calculated under the 2010 plan until March 2, 2015.

In order to prevail on this theory, Sutula-Johnson must establish that the 2010 plan constituted an enforceable employment contract that was binding on both parties and that could not be modified without her assent. It is well established, however, that compensation plans do not constitute enforceable contracts when they contain express statements negating any possible promissory intent. *Rakos v. Skytel Corp*, 954 F. Supp. 1234, 1237 (N.D. Ill. 1996) (Holderman, J.); *see also Rudolph v. Int'l Bus. Machs. Corp.*, No. 09 C 428, 2009 WL 2632195, at *3 (N.D. Ill. Aug. 21, 2009) (Norgle, J.) (collecting cases). Here, the 2010 plan expressly stated that it did not create a right to the payment of an incentive prior to that payment being made, that it was not a contract of employment "other than at-will," and that OfficeMax *retained sole discretion to amend or terminate the plan at any time for any reason without notice*. These clear disclaimers negate any possible inference of promissory intent. *Id.*

Sutula-Johnson offers no authority to rebut this proposition, but instead argues that her agreement was nevertheless required in order for the 2014 plan to supersede the 2010 plan. *M & M Elec. Co. v. Indus. Comm.*, 311 N.E.2d 161, 119, 57 Ill.2d 113 (1974). Specifically, she argues that she was not provided with a hard-copy version of the 2014 plan that applied to her until March 5, 2015 and that the 2014 and 2015 plans could not enter into effect until she signed them. As an initial matter, this Court notes that it is well established that an employee's signature is not required for a new compensation plan to go into effect unless the plan implicates contractual terms that would require affirmative consent. *Barkl v. Kaysun Corp.*, No. 10-2469, 2011 WL 4928996, *11 (N.D. Ill. Oct. 13, 2011) (Schenkier, Mag. J.). This is the case even when the employee expressly objects to the terms of the new compensation plan, so long as it is clear that the policy will enter into effect regardless of the employee's objections. *Id.*; *Duberville v. WMG, Inc.,* No. 13 C 02061, 2015 WL

7

186834, *9 (N.D. Ill. Jan. 13, 2015) (Chang, J.); *cf Shoppert v. CCTC Int'l, Inc.*, 972 F. Supp. 444, 447 (N.D. Ill. 1997) (Castillo, J.) (recognizing that an at will employee who objected to changes to his commission structure but nevertheless continued to work after those changes went into effect had accepted those changes by his continued performance, "grudging and protest-filled as that acceptance may have been"). Moreover, it is undisputed that Office Depot informed Sutula-Johnson of the new compensation plan prior to its taking effect. Sutula-Johnson was an at-will employee under the terms of the 2010 agreement. Her signature was therefore not required in order for the new 2014 compensation plan to go into effect. Rather, she accepted the new compensation terms by continuing to perform her duties after they went into effect. *Geary v. Telular Corp.*, 793 N.E.2d 128, 131, 341 Ill.App.3d 694 (2003).

Sutula-Johnson, relatedly, contends that she is entitled to $71,000 in unpaid commissions arising from sales that were secured prior to July 14, 2014 but that were not invoiced until after July 14, 2014 and were therefore compensated based on the terms of the the 2014 plan and not the 2010 plan. It is well established that although a company may prospectively modify the compensation terms of an at-will employee, it may not unilaterally modify compensation terms retroactively and thereby alter commissions already earned. *Baker v. Internap Network Servs. Corp.,* No. 09 C 875, 2010 WL 3834003, at *4 (N.D. Ill. Sept. 23, 2010) (Kennelly, J.). Sutula-Johnson, characterizing the unpaid commissions as already having been earned because they arose from completed sales, asserts that Office Depot was required to compensate her for those sales based on the terms of the 2010 plan.

Here, however, the 2010 plan provided that Sutula-Johnson earned her commissions upon invoicing to the customer. It also provided that associates did not have a vested interest in the payment of any incentive prior to the payment being made and earned. Although ordinarily it is assumed that an employee paid on commission earns the payment at the time the sale is made, that

is not the case when a clear agreement to the contrary exists. *Atkinson v. New Britain Mach. Co.*, 154 F.2d 895, 901 (7th Cir. 1946). And Sutula-Johnson agrees that, under the terms of the 2010 plan, she earned her commissions when they were invoiced to the customer. Thus, Sutula-Johnson had not yet earned her commission on the sales that had not been invoiced as of July 14, 2014, and therefore was not entitled to commissions for those sales under the 2010 plan. Office Depot's adoption of the 2014 plan accordingly did not retroactively alter commissions that Sutula-Johnson had already earned.

Finally, Sutula-Johnson contends that Office Depot breached its contract with her by failing to pay her $56,000 in pending commissions from October, November, and December 2015 following her resignation. Sutula-Johnson fails to specifically address this argument in either her memorandum supporting her motion for summary judgment or her response to Office Depot's motion.

The 2015 plan provides, in pertinent part, that:

> To be eligible for an Incentive Plan, which is based upon defined dollar targets (not Eligible Earnings), Incentive Plan payments will be pro-rated based on actual achievement of targets as set forth in the Contract Sales Business Rules document, except that associates must be employed on payment date as Incentive Plan payments are not earned or vested until payment date; an associate must be employed on date of payment to earn an Incentive Plan payment, unless otherwise required by law.

(Dkt. 58). It is undisputed that Sutula-Johnson resigned on December 21, 2015, prior to the payment date for the incentives that she would have earned from her October, November, and December sales. Accordingly, Office Depot did not breach its contract with Sutula-Johnson, because under the express terms of the incentive plan Sutula-Johnson was not entitled to receive those incentives following her resignation.

9

*The Illinois Wage Payment and Collection Act*

Sutula-Johnson also contends that Office Depot has violated the Illinois Wage Payment and Collection Act (IWPCA) by failing to pay commissions in a timely manner and by failing to pay pending commissions to employees who resigned.

Sutula-Johnson first argues that Office Depot's 2015 plan violates the Illinois Wage Payment and Collection Act because it does not pay commissions on a monthly basis as that act requires. The Act provides, in pertinent part:

> Every employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month. Commissions may be paid once a month.

820 ILCS 115/3.

The Act further provides that:

> All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative, and professional employees, as defined in the Federal Fair Labor standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned.

820 ILCS 115/4.

Sutula-Johnson contends that her compensation under the 2014 and 2015 plans constituted commissions subject to these provisions. Office Depot, conversely, asserts that Sutula-Johnson's compensation under the 2014 and 2015 plan did not constitute commissions and, alternatively, that if her compensation did constitute commissions the requirements of the IWCPA were nevertheless satisfied by Sutula-Johnson's semi-monthly salary and monthly draw.

10

This Court turns first to the question of whether or not the 2014 and 2015 plans paid Sutula-Johnson commissions within the meaning of the IWPCA. At oral arguments, the parties appeared to agree that Sutula-Johnson was paid solely on a commission basis under the 2010 Office Max Plan, with a draw against her commissions. They also appear to agree that in 2014 Sutula-Johnson converted to a "hybrid" compensation system, in which she received a bi-weekly salary of $3,400 in addition to quarterly "incentive payments" and a monthly draw against those incentive payments.

Office Depot contends that the quarterly "incentive payments" that it paid Sutula-Johnson were not commissions under the IWCPA. Sutula-Johnson, conversely, contends that no matter what they are called, the payments were "wages" under the IWPCA. Section 2 of the IWPCA expressly provides that "wages" are "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." 820 ILCS 115/2. To the extent there is any ambiguity whether this could include commissions, that ambiguity is resolved by the next line, which provides that payments to separated employees shall be termed "final compensation" and defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacations and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id.* The statute thus makes clear, by listing wages, commissions, and bonuses separately, that commissions and bonuses are distinct from both each other and from the statute's definition of wages. *See In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353 (7th Cir. 1996) (noting that words within a statute must be interpreted in a manner that "avoid[s] rendering them meaningless, redundant, or superfluous").

The question before this Court, then, is whether the payments that Sutula-Johnson received under the 2014 and 2015 plans were commissions or bonuses under the statute. Black's Law Dictionary tells us that, generally, a commission is "a fee paid to an agent or employee for a

particular transaction, usu. as a percentage of the money received from the transaction." Black's Law Dictionary 327 (10th ed. 2014).[2]  By contrast, a bonus is "a premium paid in addition to what is due or expected . . . in addition to or in excess of the compensation that would ordinarily be given." *Id.* at 217.  This Court further notes that Illinois courts, in interpreting the term "earned bonuses," have recognized that such bonuses are "typically based solely on individual production or individual performance." *Birkholz v. Corptax, LLC,* 2011 IL App (1st) 110553-U, 2011 WL 10088322, at ¶ 12 (2011) (citing *McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071, 395 Ill.App.3d 536 (2009)); *cf.* 56 Ill. Admin. Code 300.500 ("A bonus is compensation given in addition to the required compensation for services performed.").

Here, it is undisputed that payments to Sutula-Johnson under the 2014 and 2015 plans were payments above and beyond her base salary.  Office Depot asserts that this reflects the fact that the 2014 and 2015 plans were no longer intended to be Sutula-Johnson's primary source of compensation but were instead meant to be behavior-motivating bonuses.  This argument is partially supported by linguistic changes contained in the 2014 and 2015 plan.  The 2010 Plan explicitly stated that compensation under that plan was solely comprised of commissions.  By contrast, the 2014 and 2015 plans contain no reference to commissions but instead consistently describe payments under the plan as "incentive payments," thus signaling that the payments might have been meant to be something other than commissions.  *But see Bock v. Computer Assocs. Int'l., Inc.*, 257 F.3d 700, 706 (7th Cir. 2001) (recognizing that the term "incentive compensation" is an umbrella term that can include within its scope both commissions and bonuses).

Fundamental principles of contract interpretation, moreover, support treating the incentive payments as bonuses rather than commissions.  It is a fundamental tenant of contract interpretation

---

[2] Sutula-Johnson argues that the Illinois Supreme Court has observed that "'commission' is the term used to describe the payment that some salespeople receive." *Harlan v. Sweet*, 564 N.E.2d 1192, 1194, 139 Ill.2d 390 (1990).  That observation, however, was dicta in a case concerning constitutional restrictions on the compensation of public officials and, based on its context, was clearly not intended to create or modify the legal meaning of that term.

12

that contracts and other agreements must "receive that construction which would render performance under it legal, rather than one which would render performance illegal." *Aronson v. K. Arakelian, Inc.*, 154 F.2d 231, 235 (7th Cir. 1946); *see also Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1485 (D.C. Cir. 1997). The 2010 plan, which indubitably was intended to be a commission plan, provided for the monthly payment of commissions and a bi-weekly draw from those commissions. It further provided that employees who left OfficeMax would be paid commissions on any sales that had already been invoiced to the customer prior to the termination date. Incentives under the 2014 and 2015 plans, by contrast, were paid out on a quarterly basis. Moreover, those plans provided that incentives were only earned on the date of payment, such that an employee who resigned prior to the date of payment would not receive any incentive payments that might otherwise have been earned during that quarter.

Sutula-Johnson rightly contends that, if payments under the 2014 and 2015 plans constituted commissions, the provisions of the 2014 and 2015 plans would be illegal. The IWCPA clearly requires that commissions must be paid at least monthly. 820 ILCS 115/3. Moreover, although neither party offers authority on this issue, Illinois' procuring cause rule would seem to suggest that commissions, unlike bonuses, cannot be forfeited when an employee leaves an employer's service prior to payment. *See Shackleton v. Fed. Signal Corp.*, 554 N.Ed.2d 244, 248, 196 Ill.App.3d 437 (1989) ("Under the procuring-cause rule, it is established that a party may be entitled to commissions on sales made after the termination of employment if that party procured the sales through its activities prior to termination."). Accordingly, because interpreting the "incentive payments" under the 2014 and 2015 plans as commissions would bring those plans into conflict with the IWCPA, this Court instead is obligated to interpret "incentive payments" as describing payments that constitute bonuses under the IWCPA. *Aronson*, 154 F.2d at 235. As was previously set forth, 820 ILCS 115/3 applies to wages and commissions, but does not apply to bonuses. Accordingly, based on this Court's

13

interpretation of "incentive payments" Office Depot did not violate the IWCPA by paying Sutula-Johnson her incentive payments pursuant to the 2014 and 2015 plans on a quarterly basis.

Sutula-Johnson similarly contends that the defendants' refusal to pay her incentive payments earned between October and December 2015 violated the IWCPA.[3] The IWCPA provides in pertinent part that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5. As previously set forth, final compensation includes wages, salaries, earned commissions, earned bonuses, the monetary equivalent of earned vacation and earned holidays, and any other compensation owed pursuant to an employment contract or agreement. 820 ILCS 115/2.

Here, the 2014 and 2015 plans expressly provided that associates who left Office Depot's employ prior to the payment date would not be eligible for an incentive payment and that the right to payment under the plans would not vest until the time of payment. By the plain meaning of the contract, Sutula-Johnson's incentive payments thus were not owed as final compensation upon her resignation.

In limited circumstances, Illinois courts will disregard such conditional bonus provisions and instead award a pro rata portion of an employee's bonus. In *Camillo v. Wal-Mart Stores, Inc.,* 582 N.E.2d 729, 221 Ill.App.3d 614 (1991), for instance, the plaintiff was subject to an annual bonus plan that provided that assistant managers would receive bonuses, but that the bonuses would be forfeited if the assistant manager was not on the payroll on the date of payment. The defendant terminated the plaintiff shortly before the date of payment, thereby making it impossible for the

---

[3] Sutula-Johnson makes arguments in support of this claim premised on the Illinois Sales Representative Act, 820 ILCS 120. Sutula-Johnson, however, overlooks the fact that that act expressly excludes from its scope "one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act." 820 ILCS 120/1(4). Sutula-Johnson asserts that she is an employee within the meaning of the IWPCA, and thus implicitly concedes the inapplicability of the Illinois Sales Representative Act.

14

plaintiff to fulfill the bonus requirements. The court, treating an "earned bonus" as being similar to an "earned vacation" and recognizing that the plaintiff's inability to receive the bonus arose entirely from the defendant's conduct in firing him, held that the plaintiff was entitled to an 11-month pro rata share of the bonus. *Id.* at 734.

Like in *Camillo*, the bonus in question here takes the form of an earned bonus because it is acquired based on the sales representative's labor, service, or performance. *See Camillo*, 582 N.E.2d at 735 (using the Black's Law Dictionary definition of "earn" to distinguish between bonuses and earned bonuses). *Camillo*, however, is distinguishable from the present case. The compensation plan in *Camillo* provided that assistant managers "are paid a bonus each year" and did not contain any kind of disclaimer preventing the emergence of a contractual right. *In re Comdisco, Inc.*, Nos. 02 C 7030, 02 C 7031, 2003 WL 685645, at *6 (N.D. Ill. Feb. 27, 2003) (Kennelly, J.). Here, by contrast, the 2014 and 2015 plan expressly disclaimed the creation of any contractual right. Camillo, moreover, was fired in a manner suggesting his employer's intent to deprive him of his bonus (he was fired 11 months into the 12 month bonus cycle and immediately after the holiday shopping season had concluded). Unlike in *Camillo*, Sutula-Johnson chose to resign her position, knowing that doing so before she received her incentive payment would result in the forfeiture of that payment pursuant to the terms of the incentive plan. These distinctions render *Camillo* inapplicable to the present case. *Id.*; *cf.* 56 Ill. Adm. Code 300.500(a) ("An employee has a right to an earned bonus when there is an *unequivocal* promise made by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met. *Unless one of the conditions for the bonus is that the employee be on the payroll at the time of the bonus payout, the bonus is due and owing to the employee at the time of separation.*"). (Emphasis added). Accordingly, in light of the no-vested-right

provisions of the 2015 plan and Sutula-Johnson's voluntary resignation, Sutula-Johnson was not entitled to receive her pending incentive payments under 820 ILCS 115/5.

*Unjust Enrichment*

Sutula-Johnson's complaint also alleges that Office Depot unjustly enriched itself by refusing to pay her contractually agreed to commissions and retaining the monies that it was obligated to pay her. Sutula-Johnson's motion for summary judgment, however, does not address why summary judgment is appropriate as to her unjust enrichment claims, and she altogether fails to address that claim in her response to Office Depot's motion or in her reply in support of her own motion. Moreover, this Court has held that, based on the undisputed material facts, Sutula-Johnson was not deprived of contractually owed commissions. Accordingly, Sutula-Johnson has not raised a dispute of material fact as to whether Office Depot unjustly enriched itself at her expense.

**Conclusion**

For the foregoing reasons, Sutula-Johnson's motion for summary judgment is denied and Office Depot's motion for summary judgment is granted.

IT IS SO ORDERED.

Date: April 11, 2017

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge